UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TRACY G., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-198-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Tracy G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 9. Plaintiff also filed a reply brief. *See* ECF No. 10. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 9) is **GRANTED**.

## <u>BACKGROUND</u>

In a determination dated August 2013, Plaintiff was found disabled beginning November 12, 2012, the application date. Transcript ("Tr.") 126-135. Following a continuing disability review, the Commissioner determined that Plaintiff was no longer disabled as of March 23, 2017, because he had medically improved. Tr. 148-53. Plaintiff appealed, and upon reconsideration, a

Disability Hearing Officer affirmed the disability termination date of March 23, 2017 (Tr. 155-66).

Thereafter, Plaintiff filed a written request for an administrative hearing. Tr, 29. On January 3, 2020, Administrative Law Judge William M. Weir ("the ALJ") held a hearing in Buffalo, New York. Tr. 29, 74-125. Plaintiff appeared and testified at the hearing and was represented by Dennis A. Clary, an attorney. Tr. 29. Louis P. Szollosy, an impartial vocational expert, also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on February 14, 2020, finding that Plaintiff was not disabled as of March 23, 2017, due to medical improvement. Tr. 26-37[1]. On December 3, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's February 14, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I.    **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

---

[1] The Court notes that the record appears to contain two identical copies of the ALJ's decision. *Compare* Tr. 26-37 *with* Tr. 12-20.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."
*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Continuing Disability Review Standard

Once disability is established, the agency must conduct periodic continuing disability
reviews to ensure that individuals are entitled to the benefits they are receiving. *See* 42 U.S.C. §
421(i); 20 C.F.R. §§ 404.1589, 416.989. Termination of benefits may occur when there is
substantial evidence to show that a "medical improvement" restores the recipient's ability to work.
*Deronde v. Astrue*, 2013 WL 869489, at *2 (N.D.N.Y. Feb.11, 2013) (citing *inter alia* 20 C.F.R.
§ 404.1594; *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2003)). Medical improvement is defined
as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at
the time of the most recent favorable medical decision that [he or she was] disabled or continued
to be disabled." *Id*. (citing *inter alia* 20 C.F.R. § 404.1594(b)(1)). The Commissioner must
compare the current medical severity of plaintiff's impairment to the severity of that impairment
at the time of the most recent favorable decision. *Douglass v. Astrue*, 496 Fed. App'x 154, 155 (2d
Cir.2012) (citing *Veino*, 312 F.3d at 586–87).

To determine if the claimant continues to be disabled under Title XVI, the ALJ must follow
a seven-step evaluation process (20 CFR 416.994). At step one, the ALJ must determine whether
the claimant has an impairment or combination of impairments which meets or medically equals
the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF
416.920(d), 416.925 and 416.926). If the claimant does, his disability continues (20 CFR
416.994(b)(5)(i)).

At step two, the ALJ must determine whether medical improvement has occurred (20 CFR
416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s)

as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 416.994(b)(1)(i)). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

At step three, the ALJ must determine whether medical improvement is related to the ability to work (20 CFR 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 416.994(b)(1)(iii)). If it does, the analysis proceeds to the fifth step.

At step four, the ALJ must determine if an exception to medical improvement applies (20 CFR 416.994(b)(5)(iv)). There are two groups of exceptions (20 CFR 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step five, the ALJ must determine whether all the claimant's current impairments in combination are severe (20 CFR 416.994(b)(5)(v)). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step six, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work (20 CFR 416.994(b)(5)(vi)). If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity and considering his age, education, and past work experience (20 CFR 416.994(b)(5)(vii)). If the claimant can perform other work, he is no longer

disabled. If the claimant cannot perform other work, his disability continues. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 14, 2020 decision:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated August 15, 2013. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: renal stones, status post renal surgery; obesity. These impairments were found to result in the residual functional capacity to perform less than the full range of sedentary work. The claimant can sit for less than 6 hours in an 8-hour workday and stand/walk for less than 2 hours in an 8-hour workday. Secondary to chronic kidney disease, stage 5, the claimant experiences nausea and severe fatigue and otherwise does not have sufficient concentration, persistence or pace necessary to perform competitive work for an eight-hour workday.

3. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through March 23, 2017. Thus, the claimant's current impairments are the same as the CPD impairments.

4. Since March 23, 2017, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

5. Medical improvement occurred on March 23, 2017 (20 CFR 416.994(b)(1)(i)).

6. Beginning on March 23, 2017, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c)[2] except he could lift 25 pounds frequently and 50 pounds occasionally; stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

7. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 416.994(b)(2)(iv)(B)).

8. Since March 23, 2017, the claimant's impairments [have] continued to be severe (20 CFR 416.994(b)(5)(v)).

9. The claimant has no past relevant work (20 CFR 416.965).

10. On March 23, 2017, the claimant was a younger individual age 18-49 (20 CFR 416.963).

11. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

12. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

13. Since March 23, 2017, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 416.960(c) and 416.966).

14. The claimant's disability ended on March 23, 2017, and the claimant has not become disabled again since that date (20 CFR 416.994(b)(5)(vii)).

Tr. 29-36.

Accordingly, the ALJ determined that the claimant's disability under section 1614(a)(3)(A) of the Social Security Act ended on March 23, 2017, and the claimant has not become disabled again since that date. Tr. 37.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ failed to show that, since March 23, 2017, he had medically improved to the extent he was capable of sustained work activities consistent with the RFC for medium work. *See* ECF No. 7-1 at 17-25. Specifically, Plaintiff argues that the ALJ's RFC finding was based on an "improper selective and lay reading of opinion and evidence," and therefore, the RFC was not supported by substantial evidence. *See id*. Plaintiff's second point argues that the Appeals Council failed to account for new and material evidence—evidence that Plaintiff alleges was directly related to his already-existing conditions and, therefore, probative to the determination of continuing disability. *See id*. at 25-30.

6

The Commissioner argues in response that the ALJ properly found that Plaintiff had medically improved as of March 23, 2017. *See* ECF No. 9-1 at 8-11. The Commissioner also argues that the Appeals Council properly did not admit evidence Plaintiff submitted after the administrative hearing. *See id*. at 11-12.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record, including the additional evidence submitted to the Appeals Council, the Court finds that the ALJ properly found that Plaintiff had medically improved as of March 23, 2017. In making his finding, the ALJ considered the medical opinion evidence, treatment notes showing consistently normal physical examination findings, including normal gait and posture, and creatinine[3] results that were stable and improved.  Furthermore, Plaintiff has failed to show that the additional evidence submitted to the Appeals Council rendered the ALJ's decision erroneous. Accordingly, the ALJ's RFC determination was supported by substantial evidence, and the Court finds no error.

Plaintiff underwent an Internal Medicine Examination ("IME") with David Brauer, M.D. ("Dr. Brauer"), on February 23, 2017. Tr. 391-94. Plaintiff reported doing well since his renal transplant in July 2014, and he denied any issues with rejection. Tr. 391. Plaintiff also reported his

---

[3] A creatinine test is a measure of how well kidneys are filtering waste from the blood. Healthy kidneys filter creatinine out of the blood, and creatinine exits your body as a waste product in urine. High levels of creatinine in the blood or urine can be a sign that the kidneys are not filtering the blood effectively. *See* https://www.mayoclinic.org/tests-procedures/creatinine-test/about/ (last visited Mar. 10, 2023).

kidney function was "okay." Tr. 391. Plaintiff reported activities of daily living that included cooking and cleaning seven times per week, shopping one time per week, showering and dressing himself daily, and socializing with friends. Tr. 392. Upon examination, Plaintiff exhibited normal gait and stance, full squat with no help getting on and off examination table, no difficulty heel to toe walking, and he was also able to rise from chair without difficulty. *Id.* Plaintiff's musculoskeletal and extremity examinations revealed normal, full range of motion, full extension, with stable and nontender joints, and no cyanosis, clubbing, edema, or muscle atrophy. Tr. 392-93. Dr. Bauer opined that Plaintiff had no limitation in his ability to sit, stand, walk, climb, push, pull, lift, or carry objects. Tr. 394.

On March 3, 2017, W. Wells, M.D. ("Dr. Wells"), reviewed Plaintiff's file as of that date, including Dr. Bauer's examination report. Tr. 135-44, 395-98. Dr. Wells noted that Plaintiff reported that his kidney function was "okay," and his renal function had been normal in recent years. Tr. 395, 397. Dr. Wells noted a normal creatinine level in June 2016, as well as normal gait and station and normal musculoskeletal exam. Tr. 141. Dr. Wells opined that Plaintiff was medically improved with respect to work-related activities and had the "RFC [to] lift 25 lbs frequently and 50 lbs occasionally; stand and walk 6 hrs. per day; [and] sit 6 hr /day" with no other limitations. *Id.*

Plaintiff visited Joshua Usen, D.O. ("Đr. Usen"), at Sweet Home Family Medicine, in June 2017, for follow up regarding his renal transplant. Tr. 404-06. Plaintiff had treated with Dr. Usen since September 28, 2012, for treatment of his kidney condition and other conditions. *See* Tr. 399-592, 680-755. Plaintiff reported that he attempted to return to work doing light labor moving boxes, but he had difficulty due to fatigue and soreness. Tr. 404. Dr. Usen opined that it "seem[ed] difficult" for Plaintiff to return to work with his fatigue. Tr. 406.

On June 15, 2017, state agency medical consultant G. Ehlert, M.D. ("Dr. Ehlert"), reviewed the medical record and determined that Plaintiff could perform medium work with no other limitations. Tr. 410-13. Dr. Ehlert noted that although Plaintiff complained of fatigue, his physical examinations were within limits, and he maintained normal renal function. Tr. 412.

In October 2017, imaging results showed normal resistive indices and peak systolic velocities without evidence of perinephric fluid collection or obstructive uropathy. Tr. 428.

From January 2018 through December 2019, Plaintiff treated at Primary Care of Western New York. During his visits, Plaintiff's physical examination results were consistently normal, including normal gait (Tr. 498, 539, 542, 566, 572, 651, 654, 666, 695, 698-99, 701), and his creatinine levels were stable and improved (Tr. 535, 539, 567, 667, 696, 702). In January 2018, Prashant Pendyala, M.D. ("Dr. Pendvala"), stated that Plaintiff "seem[ed] to be doing well," and his same medications would be continued. Tr. 543.

In May and July 2018, Plaintiff had unremarkable imaging results after undergoing renal imaging and abdomen/pelvic CT scans. Tr. 430-32.

Plaintiff had post-transplant follow-up visits at Erie County Medical Center on June 26, 2018 (Tr. 434-36) and July 30, 2018 (Tr. 437-41). Plaintiff reported no renal rejection; he was doing well; his physical examinations were normal; and his creatinine levels were stable and within normal range. Tr. 434, 436, 440.

In February 2019, Plaintiff began treating with urologist John Bodkin, M.D. ("Dr. Bodkin"), for left renal stone and lower urinary tract symptoms. Tr. 532-33. Following a cystoscopy to locate the stone, Plaintiff was scheduled for lithotripsy. *Id*. Plaintiff underwent right extracorporeal shockwave lithotripsy on March 1, 2019, and December 10, 2019. Tr. 725, 748.

During follow-up visits with Dr. Bodkin, Plaintiff continued to show unremarkable and/or normal examination results. Tr. 729, 753, 757-58.

## I.     The Appeals Council Properly Considered Plaintiff's Additional Evidence.

The Court first considers Plaintiff's second point of error regarding the Appeals Council's consideration of additional evidence. *See* ECF No. 7-1 at 25-30. Plaintiff submitted additional evidence from ResMed AirView, dated January 1, 2018 through August 20, 2018 (Tr. 55-56); and Primary Care of Western New York, LLP, dated April 2, 2019 through August 27, 2019 (Tr. 67-68). The Appeals Council reviewed the additional evidence and determined that it did not show a reasonable probability that it would change the outcome of the ALJ's decision. Tr. 2.

Plaintiff also submitted additional evidence from Primary Care of Western New York, LLP, dated March 19, 2020 through August 27, 2020 (Tr. 57-66); UBMD Orthopaedics, dated February 27, 2020 (Tr. 53-54); and University of Rochester Medical Center, dated August 25, 2020 (Tr. 69-73). Because this additional evidence does not relate to the period at issue, the Appeals Council determined that the evidence did not affect the decision about whether Plaintiff was disabled beginning on or before February 14, 2020, the date of the ALJ's decision. Tr. 2. Accordingly, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* Tr. 1-6.

As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45. The regulations expressly authorize claimants to submit new and material evidence[4] to the Appeals Council

---

[4] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The

without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014).

Accordingly, when the Appeals Council denies review, this Court must review the ALJ's decision in the context of the entire administrative record, including any new evidence, to determine if the ALJ's decision is supported by substantial evidence, rather than review the Appeals Council's denial. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The relevant inquiry is not whether the Appeals Council properly determined whether the evidence was new and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the Appeals Council. *Id*. In other words, a reviewing court must determine whether the submitted evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); *see Bushey*, 552 F. App'x at 98 (noting that new evidence "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").

In addition, the regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. § 404.967 (only requires Appeals Council to notify the party of its action), and § 404.970 (does not mention any information that must be in the denial notice). Furthermore, the Second Circuit has specifically acknowledged

---

concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of certiorari. *See Pollard v. Halter*, 377 F.3d, 183, 192 (2d Cir. 2004) (citations omitted). Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision.

Contrary to Plaintiff's argument that the Appeals Council provided "insufficient reasoning" for disallowing the additional evidence. as noted above, the Appeals Council was not required to elaborate further. Furthermore, the Court has reviewed the entire record, including the additional evidence, and finds that Plaintiff has failed to show that the additional evidence, when considered with the entire record, rendered the ALJ's decision erroneous. *See Bushey*, 552 F. App'x at 98.

First, the Appeals Council properly declined to exhibit the evidence from ResMed Airview, which consists of two "Compliance Reports" related to Plaintiff's treatment for sleep apnea. Tr. 55-56. The Court finds that the Appeals Council's conclusion that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision (Tr. 2) was appropriate given that sleep apnea was not a severe impairment that caused Plaintiff to be disabled prior to March 23, 2017.

With respect to the evidence from Primary Care of Western New York dated April 2, 2019 and August 27, 2019 (Tr. 67, 68), the April 2, 2019 evidence is a note from Dr. Usen excusing Plaintiff from his disability hearing due to acute illness (Tr. 68), and the August 27, 2019 evidence is an opinion from Dr. Usen that Plaintiff was unable to work at that time due to "the summation of his conditions" (Tr. 67). The Court finds that the Appeals Council's determination not to exhibit this evidence was also appropriate. Tr. 2. As noted above, one record is an excuse note and the other renders an opinion regarding Plaintiff's ability to work, which is an issue reserved for the

Commissioner. *See* 20 C.F.R. § 416.920c. Accordingly, the Appeals Council properly found that this evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. Tr. 2.

Finally, the Appeals Council properly determined that the remaining evidence, all of which was dated after the ALJ's February 14, 2020 decision, did not relate to the period at issue, and therefore, was not chronologically relevant. As the Appeals Council explained, if Plaintiff wants the Agency to consider whether he was disabled after February 14, 2020, he will need to apply again. Tr. 2.

Based on the foregoing, the Appeals Council properly considered these records and correctly found that they did not constitute a basis for review of the ALJ's decision. Tr. 2. Because the Court finds that the new evidence did not make the ALJ's ultimate finding that Plaintiff was not disabled after March 23, 2017 "contrary to the weight of the evidence," remand is not warranted. *See Rutkowski*, 368 F. App'x at 229.

## II.   The ALJ Properly Found That Plaintiff Medically Improved.

Plaintiff's first point of error alleges that the ALJ improperly concluded that Plaintiff had medically improved, and therefore, the RFC determination was not supported by substantial evidence. As previously noted, the ALJ determined that Plaintiff medically improved on March 23, 2017, and therefore, his disability ended, and he did not become disabled again since that date. Tr. 32-37. Contrary to Plaintiff's assertion, substantial evidence, including the objective evidence of record, treatment notes, opinion evidence and Plaintiff's functional abilities, supports the ALJ's finding that Plaintiff experienced medical improvement related to his ability to work. Furthermore, the ALJ set forth specific findings and evidence in the record to support his conclusion. Tr. 33-34.

For example, the ALJ noted that the objective evidence of record showed that Plaintiff's physical examination results were consistently normal, including normal gait and posture, and his creatine levels were stable and improved. Tr. 33-34, 434, 436, 440, 498, 535, 539, 542, 566, 567, 572, 651, 654, 666, 667, 695, 696 698-699, 701, 702, 729, 753, 757-758. Next, the treatment notes include reports by Plaintiff and his providers that he was doing well since his renal transplant in July 2014; he denied any issues with rejection; and his kidney function was okay.   Tr. 391. Although he reported some issues following the transplant surgery, he was since doing well. *Id*. In March 2017, Plaintiff Dr. Wells noted that Plaintiff reported his kidney function was "okay," and his renal function has been normal in recent years. Tr. 395, 397. In January 2018, Dr. Pendyala noted that Plaintiff seemed to be doing well. Tr. 543. In June and July 2018, Plaintiff reported he was doing well with no renal rejection. Tr. 434, 440.

Additionally, the ALJ considered the prior administrative findings of state agency medical consultant Dr. Ehlert to support his medical improvement determination. Tr. 35. On June 15, 2017, Dr. Ehlert reviewed the medical record and determined that Plaintiff could perform medium work with no other limitations. Tr. 410-13. Dr. Ehlert noted that Plaintiff's physical examination was within normal limits, and he maintained normal renal function. Tr. 412. The ALJ explained that he gave Dr. Ehlert's opinion significant weight because his limitations were based on objective findings in the record. Tr. 35.   *See* 20 C.F.R. § 416.1513a(b)(1) (State agency physicians are "highly qualified" experts in evaluation of disability claims, and their opinions are to be treated as expert opinion evidence); *see also Frye ex rel. A.O. v. Astrue*, 485 F.App'x 484, 487 (2d Cir. Jun. 13, 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Christina v. Colvin*,

594 F. App'x 32, 33 (2d Cir. 2015) (finding that a state agency doctor's opinion supported an ALJ's RFC determination).

The ALJ also reasonably relied on the February 23, 2017 opinion of consulting examiner Dr. Brauer to support his determination that Plaintiff experienced medical improvement as of March 23, 2017. Tr. 34-35. State agency consulting physician opinions, such as those of Dr. Brauer, can constitute substantial evidence to support an ALJ's conclusions. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision, and can even override a treating source opinion); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave great weight to the opinion of a medical expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (finding that opinion of state agency physician provided substantial evidence to support ALJ's RFC finding).

As previously noted, Plaintiff reported to Dr. Brauer that he was doing well since his renal transplant in July 2014; he denied any issues with rejection; and he reported that his kidney function was okay. Tr. 391. On examination, Plaintiff exhibited normal gait and stance, full squat with no help getting on and off examination table and no difficulty heel to toe walking, and he was also able to rise from a chair without difficulty. Tr. 392. He had normal, full range of motion, full extension, with stable and nontender joints and no cyanosis, clubbing, edema or muscle atrophy. Tr. 392-93. Dr. Bauer opined that Plaintiff had no limitation in his ability to sit, stand, walk, climb, push, pull, lift or carry objects. Tr. 394. As the ALJ noted, Dr. Brauer's opinion was based on his objective examination findings and consistent with the medical evidence. *Id.*

Finally, Plaintiff's reported activities and functional abilities supported the ALJ's determination that Plaintiff was medically improved as of March 23, 2017. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); The ALJ noted that Plaintiff reported to Dr. Brauer that he cooked and cleaned, shops, showers, and dresses, and he spent time listening to the radio, watching television and socializing with friends. Tr. 37, 392. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). The ALJ also noted that following his December 2019 lithotripsy procedure, Plaintiff reported he was exercising for 30 minutes, three times per week. Tr. 34, 754.

Based on the foregoing objective medical evidence, the treatment notes, the prior administrative findings, the opinion evidence, and Plaintiff's reported activities and functional abilities, substantial evidence supports the ALJ's determination that Plaintiff had medically improved as of March 23, 2017. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original).

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence, or to argue that some evidence in the record

could support his position; what he must show is that no reasonable factfinder could have reached the ALJ's conclusions on this record, which he has failed to do. *See Brault*, 683 F.3d at 448; *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might have reached a different conclusion); *see also Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision.") (citations omitted). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record including the medical opinion evidence, the treatment reports, and Plaintiff's testimony, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

17